UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 2:08-cr-14-JPH-CMM -06 |
| v. | ORDER ON MOTIONS FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) |
| DEWAYNE PHELPS | (COMPASSIONATE RELEASE) |

Upon motions of ☒ the defendant ☐ the Director of the Bureau of Prisons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A), and after considering the applicable factors provided in 18 U.S.C. § 3553(a) and the applicable policy statements issued by the Sentencing Commission,

IT IS ORDERED that the motions are:

☒ DENIED.

☐ DENIED WITHOUT PREJUDICE.

☐ OTHER:

☒ FACTORS CONSIDERED: See attached opinion.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:08-cr-00014-JPH-CMM |
| | ) | |
| DEWAYNE PHELPS, | ) -06 | |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Dewayne Phelps has filed motions seeking compassionate release under § 603 of the First Step Act of 2018, which is codified at 18 U.S.C. § 3582(c)(1)(A). Dkts. 726, 742. Mr. Phelps seeks immediate release from incarceration based on his risk of severe illness should he contract COVID-19 and family circumstances (two ill family members). *Id.* For the reasons explained below, his motions are **DENIED**.

**I.     Background**

According to the stipulated factual basis supporting his guilty plea, Mr. Phelps was involved in a methamphetamine trafficking ring in Indiana in 2008. Dkt. 347. Mr. Phelps acted as a distributor for the organization, and he was found to be accountable for the distribution of between 500 and 1,500 grams of a mixture or substance containing a detectable amount of methamphetamine. *Id.* In November 2009, Mr. Phelps pled guilty to one count of conspiracy to distribute 500 grams or more of methamphetamine (mixture), in violation of 21 U.S.C. §§ 841(a)(1), 846, and 851(a)(1) (count 1), and one count of possession with intent to distribute 50 grams or more of methamphetamine (mixture), in violation of 21 U.S.C. §§ 841(a)(1) and 851(a)(1) (count 5). Dkts. 505, 512. The Court sentenced him to 240 months of imprisonment on

Count 1 and 120 months of imprisonment on Count 5, to run concurrently. Dkt. 512. The Court also imposed a supervised release term of 10 years. *Id.* The Bureau of Prisons ("BOP") lists Mr. Phelps's anticipated release date (with good-conduct time included) as July 23, 2022.

Mr. Phelps is 38 years old. He is currently incarcerated at FCI Morgantown in Morgantown, West Virginia. As of August 5, 2021, the BOP reports that 1 inmate and 1 staff member at FCI Morgantown have active cases of COVID-19; it also reports that 148 inmates at FCI Morgantown have recovered from COVID-19 and that no inmates at FCI Morgantown have died from the virus. https://www.bop.gov/coronavirus/ (last visited Aug. 5, 2021). The BOP also reports that 245 inmates at FCI Morgantown have been fully inoculated against COVID-19. *Id.* That is, over 60% of the inmates at FCI Morgantown have been fully inoculated against COVID-19. *See* https://www.bop.gov/about/statistics/population_statistics.jsp (showing that as of Aug. 5, 2021, the BOP reports that FCI Morgantown has a total inmate population of 394).

Mr. Phelps initially filed his motion for compassionate release pro se. Dkt. 726. The Court appointed counsel, dkt. 729, and appointed counsel filed an amended motion, dkt. 742. The United States filed a brief in opposition to the motion, dkt. 746, and Mr. Phelps filed a reply, dkt. 747. The Court ordered additional briefing, dkts. 764, 776, and the parties responded, dkts. 770, 778. The motions are now ripe for decision. As explained below, Mr. Phelps has not presented an extraordinary and compelling reason warranting relief under § 3582(c)(1)(A). Thus, his motions must be denied.

**II.   Discussion**

Mr. Phelps seeks immediate release based on "extraordinary and compelling reasons" as set forth in 18 U.S.C. § 3582(c)(1)(A)(i). Dkt. 742. Specifically, he contends that his medical conditions (prior bacterial meningitis infection, history of acute renal failure and hypothyroidism),

3

which make him more susceptible to severe complications from COVID-19, combine with the BOP's inability to control COVID-19 outbreaks in their facilities to establish extraordinary and compelling reasons to reduce his sentence to time served. *Id.* Mr. Phelps argues that he also establishes extraordinary and compelling reasons to release him because his mother was recently hospitalized due to a stroke and his sister was diagnosed with a brain tumor.[1] Dkt. 748. In response, the United States argues that Mr. Phelps has not shown extraordinary and compelling reasons warranting relief, noting particularly that Mr. Phelps has been fully vaccinated against COVID-19. Dkts. 746, 770. It also argues that Mr. Phelps would be a danger to the community if released. Dkt. 746. In reply, Mr. Phelps contends that he is not protected from COVID-19 simply because he is vaccinated, arguing that the COVID-19 vaccine is not 100% effective; that he may still be susceptible to virus variants; and that it is unclear whether his compromised immune system will response to the vaccine. Dkt. 778.

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the Bureau of Prisons could file a motion for a reduction based on "extraordinary and compelling reasons." Now, a defendant is

---

[1] Mr. Phelps also initially argued that if he were sentenced today, he would receive a lower sentence due to mandatory minimums affected by the First Step Act, and therefore he is entitled to a sentence reduction. Dkt. 742. In light of a recent Seventh Circuit case relevant to that argument, *see United States v. Thacker*, __ F.4th __, No. 20-2943, 2021 WL 2979530 (7th Cir. July 15, 2021), the Court entered an order requiring Mr. Phelps to show cause why his sentence disparity argument should not be rejected. Dkt. 781. The Court informed Mr. Phelps that if he failed to respond to the order, the Court would consider the argument to be abandoned. *Id.* Mr. Phelps did not response to the order, and therefore the Court considers his argument regarding sentencing disparity to be abandoned and will not address it.

also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier,[2] may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). It directed that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.* Before passage of the First Step Act, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

---

[2] The United States concedes that Mr. Phelps exhausted his administrative remedies. Dkt. 746 at 6.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the sentencing factors in 18 U.S.C. § 3553(a), "to the extent they are applicable." U.S.S.G. § 1B1.13.

As to the first consideration, Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances (the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner). U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)," "[a]s determined by the Director of the Bureau of Prisons." *Id.*, Application Note 1(D).

The policy statement in § 1B1.13 addresses only motions from the Director of the BOP. *Id.* ("Upon the motion of Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment . . ."). It has not been updated since the First Step Act amended § 3582(c)(1)(A) to address motions that are filed by prisoners. As a result, the Sentencing Commission has not yet issued a policy statement "applicable" to motions filed by

prisoners. *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020). And, in the absence of an applicable policy statement, the portion of § 3582(c)(1)(A) requiring that a reduction be "consistent with the applicable policy statements issued by the Sentencing Commission" does not curtail a district court judge's discretion. *Id.* at 1180. Nonetheless, the Commission's analysis in § 1B1.13 can guide a court's discretion without being conclusive. *Id.* As to motions brought under the "catchall" provision in Subsection (D), district judges should give the Director of the BOP's analysis substantial weight (if he has provided such an analysis), even though those views are not controlling. *Id.*

Accordingly, the Court evaluates motions brought under the "extraordinary and compelling" reasons prong of § 3582(c)(1)(A) with due regard for the guidance provided in § 1B1.13 by deciding: (1) whether a defendant has presented an extraordinary and compelling reason warranting a sentence reduction;[3] (2) whether the defendant presents a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) whether the applicable sentencing factors in § 3553(a) favor granting the motion.

The risk that Mr. Phelps faces from the COVID-19 pandemic is not an extraordinary and compelling reason to release him, whether alone or in combination with his desire to help his ill family members. While the Court sympathizes with Mr. Phelps's fear of contracting the virus, the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere

---

[3] In keeping with the Seventh Circuit's instruction in *United States v. Gunn*, 980 F.3d 1178, 1180–81 (7th Cir. 2020), the Court has considered the rationale provided by Mr. Phelps's warden in denying Mr. Phelps's administrative request for relief. Mr. Phelps's warden appears not to have considered the possibility that Mr. Phelps could show an "extraordinary and compelling reason" under Subsection (D) of the policy statement. *See* dkt. 742-6. Thus, the warden's decision provides little guidance to the Court's analysis.

existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD01, dkt. 33 (S.D. Ind. Aug. 12, 2020) (concluding that the general threat of contracting COVID-19 is not an extraordinary and compelling reason warranting a sentence reduction).

Mr. Phelps claims that he is at an increased risk of experiencing severe COVID-19 symptoms because he suffers from various medical conditions—specifically, a compromised immune system from a childhood bout of bacterial meningitis, history of renal failure and hypothyroidism. It is not clear whether Mr. Phelps's currently suffers from these conditions, and if so, whether those conditions are ones that the CDC (Centers for Disease Control) would classify as conditions that can make you more likely to get severely ill from COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 5, 2021). Nevertheless, the Court will assume that he does have such a condition for purposes of this motion.

Earlier in the pandemic, the Court found on several occasions that a defendant had established extraordinary and compelling reasons warranting release when the defendant suffered from conditions that the CDC recognized as increasing the risk of severe COVID-19 symptoms. *See*, *e.g.*, *United States v. Johnson*, No. 1:99-cr-59-JMS-DML-06, dkt. 317 (S.D. Ind. Mar. 11, 2021). Underlying those holdings was the understanding that the virus was difficult to control in a prison setting, in part because no vaccine had yet been made widely available.

The situation has now changed dramatically. Three vaccines are being widely distributed in the United States, including the Pfizer vaccine that Mr. Phelps received. *See* dkt. 770. Although

8

no vaccine is perfect, the CDC has recognized that mRNA vaccines like the Pfizer vaccine are effective at preventing COVID-19 and that COVID-19 vaccination prevented most people from getting COVID-19. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Aug. 5, 2021). The CDC also reports that the COVID-19 vaccines authorized for use in the United States offer protection against most variants currently spreading in the United States. *Id.* The vaccines are not 100% effective, and some vaccinated people may still get sick. *Id.* The CDC reports, however, that mRNA COVID-19 vaccines have been shown to provide protection against severe illness and hospitalization among people of all ages eligible to receive them, including people 65 years and older who are at higher risk of severe outcomes from COVID-19. *Id.*

COVID-19 vaccines have been made widely available within the BOP. As of August 5, 2021, the BOP has administered more than 200,000 doses of the vaccine and has fully inoculated tens of thousands of BOP staff members and inmates. *See* https://www.bop.gov/coronavirus/ (last visited Aug. 5, 2021). Mr. Phelps has now received both doses of the COVID-19 vaccine—thus, dramatically reducing his chances of being infected with COVID-19 and suffering severe symptoms if he is infected. In addition, as noted above, about 60 percent of the inmates housed at FCI Morgantown have received both doses of the COVID-19 vaccine. This high rate of vaccination at FCI Morgantown should provide Mr. Phelps with additional protection against infection. *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/effectiveness/work.html (last visited Aug. 5, 2021) ("In addition to providing protection against COVID-19, there is increasing evidence that COVID-19 vaccines also provide protection against COVID-19 infections without symptoms (asymptomatic infections). COVID-19 vaccination can reduce the spread of disease overall, helping protect people around you."). The BOP has also met with recent success in controlling the

9

COVID-19 virus at FCI Morgantown. As noted above, the BOP reports that only 1 inmate and 1 staff member at FCI Morgantown currently have active cases of COVID-19.

Recently, the Seventh Circuit held that COVID-19 could not be an extraordinary and compelling reason for release for an inmate who had declined the vaccine without an adequate medical justification. *See United States v. Broadfield*, __ F.4th __, No. 20-2906, 2021 WL 3076863 (7th Cir. July 21, 2021). In so holding, the court reasoned, "[F]or the many prisoners who seek release based on the special risks created by COVID-19 for people living in close quarters, vaccines offer far more relief than a judicial order. A prisoner who can show that he is unable to receive or benefit from a vaccine may still turn to this statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *Id.* at \*2. Moreover, the court concluded that "[t]he federal judiciary need not accept a prisoner's self-diagnosed skepticism about the COVID-19 vaccines as an adequate explanation for remaining unvaccinated, when the responsible agencies all deem vaccination safe and effective." *Id.*

Thus, Mr. Phelps has been fully vaccinated against COVID-19, the majority of inmates at his facility have been fully vaccinated, and there is only one inmate with a current COVID-19 infection at his facility. Given these facts and the rationale of *Broadfield*, the Court declines to exercise its discretion to find that the risk Mr. Phelps faces from the COVID-19 pandemic constitutes an extraordinary and compelling reason warranting release under § 3582(c)(1)(A). *See United States v. Gaskins*, No. 1:16-cr-249-JMS-MJD-3, dkt. 274 (S.D. Ind. Feb. 16, 2021) (finding no extraordinary and compelling reason based on COVID-19 risk where defendant had been fully vaccinated); *United States v. Schoonover*, No. 1:02-cr-156-JMS-TAB-01, 2021 WL 1814990, at \*4 (S.D. Ind. May 6, 2021) (same); *see also United States v. Harris*, No. 4:16-cr-40073-SLD, 2021

WL 2021440, at *3 (C.D. Ill. May 20, 2021) ("In light of his vaccination and the low number of cases at USP Lompoc currently, the Court finds that Defendant has not shown extraordinary and compelling reasons for release exist based on the COVID-19 pandemic."); *United States v. Williams*, Criminal No. 16-251 (DWF/KMM), 2021 WL 1087692, at *3–4 (D. Minn. Mar. 22, 201) ("[T]he Court finds that any risk that Williams will be reinfected with COVID-19 is largely mitigated by the fact that he has been fully vaccinated against the virus . . . . The Court recognizes Williams's concern that the vaccine's efficacy against new variants of COVID-19 is unknown; however, the Court finds this fear entirely speculative . . . ." (citations omitted)); *United States v. Grummer*, ___ F. Supp. 3d ___, No. 08-CR-4402-DMS, 2021 WL 56782, at *2 (S.D. Cal. Feb. 16, 2021) (collecting cases and stating, "Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions.").

Mr. Phelps cites to some articles speculating that the vaccines may not provide full protection to those individuals whose immune systems are suppressed, but he provides no evidence to suggest this is the case in real-world application. *See generally* dkt. 778. In fact, as of July 26, 2021, more than 163 million people in the United States have been fully vaccinated against COVID-19. During the same time, the CDC received reports from 49 U.S. states and territories of only 6,587 patients with COVID-19 vaccine breakthrough infection (less than 1%) who were hospitalized or died. *See* https://www.cdc.gov/vaccines/covid-19/health-departments/breakthrough-cases.html (last visited Aug. 5, 2021). Certainly, many of the 163 million vaccinated individuals likely have compromised immune systems, yet less than 1% of vaccinated Americans have been hospitalized or died. All inmates—and, indeed, all people—are subject to some risk from infectious disease. While the COVID-19 vaccine may not offer Mr.

Phelps perfect protection, the risk that he will become severely ill or die from the virus has been so substantially diminished that it is not an extraordinary and compelling reason warranting relief.

Mr. Phelps's desire to be released to help care for his ill relatives also does not establish extraordinary and compelling reasons warranting early release, whether alone or in combination with the risk he faces from COVID-19. Dkt. 748. While the Court is sympathetic to Mr. Phelps's situation and hopes for a full recovery for both individuals, many defendants would like to be released to care for ill relatives.  *Cf. United States v. Trice*, No. 1:13-cr-222-TWP-DML-1, Dkt. 114 at 5 (S.D. Ind. Aug. 4, 2020) (collecting cases about defendants requesting compassionate release to care for elderly or ill parent); *United States v. Jackson*, No. 1:18-cr-314-RLY-MJD-1, dkt. 33 (S.D. Ind. Aug. 12, 2020) (same); *United States v. Crandle*, 2020 WL 2188865, at *3 & n.27 (M.D. La. May 6, 2020) (same); *United States v. Ingram*, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary."). There is no indication that Mr. Phelps is the only possible caregiver for his family or that his presence is necessary for any other reason. Accordingly, the Court does not find that Mr. Phelps has established extraordinary and compelling reasons warranting compassionate release.

Because the Court declines to find extraordinary and compelling reasons warranting release, it need not determine whether the § 3553(a) factors warrant release.

### III.   Conclusion

For the reasons stated above, Mr. Phelps's motions for compassionate release, dkts. [726] and [742] are **denied**.

**SO ORDERED.**

Date: 8/18/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel